## *In re* WONG YUNG QUY.

(*Circuit Court, D. California.* February 5, 1880.)

**HABEAS CORPUS—JURISDICTION OF FEDERAL COURTS—UNCONSTITUTIONAL STATE STATUTE.**

Under Rev. St. U. S. § 752, which authorizes judges of the supreme court and of the district and circuit courts to grant writs of *habeas corpus*, and section 753, which provides that the writ shall not extend to a prisoner in jail, unless, among other cases, he is in custody in violation of the constitution, or of a law or treaty of the United States, such judges can on *habeas corpus* inquire into the legality of imprisonment by judgment of a state court under a state statute alleged to be in violation of the constitution and of a treaty of the United States.

Application for Writ of *Habeas Corpus.*
*George E. Bates, J. M. Rothchild,* and *M. S. Horan,* for petitioner.
*Jo Hamilton,* Atty Gen., and *Crittenden Thornton,* for respondent.
Before SAWYER, Circuit Judge.

SAWYER, J. The petitioner, a subject of the empire of China, having been convicted of a misdemeanor committed in removing a dead body of one of his countrymen from the place of interment without a permit, contrary to the provisions of "An act to protect public health from infections caused by exhumation and removal of the remains of deceased persons," passed by the legislature of California, April 1, 1878, (St. 1877–78, p. 1050,) was sentenced to pay a fine of $50, and in default of payment to be imprisoned for a period of 25 days. Failing to pay the fine, and having been committed to prison, he sued out a writ of *habeas corpus,* and asked to be discharged on the ground that the said act of the legislature of California was passed in violation of the fourteenth amendment of the national constitution and of the Burlingame treaty; and that it is, therefore, void. Crittenden Thornton, Esq., and the attorney general of California representing the state, appearing as counsel on the part of the respondent, raise a preliminary objection that the court has no jurisdiction, in the case of a party held in custody by virtue of a judgment of a state court, to inquire upon *habeas corpus* into the validity of the judgment under which he is held, where the judgment is regular in form upon its face. It is insisted that the state court had jurisdiction to determine the validity of the statute; and, having determined it, the determination is conclusive in all other proceedings, except upon writ of error from a court having appellate jurisdiction to revise the action of the court below. A very able and exhaustive argument has been filed in support of the objection taken to the jurisdiction, the only question as yet submitted for decision. Section 752 of the Revised Statutes provides that the justices and judges of the United States courts, "within their respective jurisdictions, shall have power to grant writs of *habeas corpus* for the purpose of an inquiry into the cause of restraint of liberty." This section is general and unlimited in its terms. But section 753 limits the cases in which the writ may be issued, and provides, among other cases, that "the writ of *habeas corpus* shall in

no case extend to a prisoner in jail, unless where he  *  *  *  is in custody in violation of the constitution, or of a law or treaty of the United States." Under these provisions it seems clear that the writ may issue and the prisoner be discharged whenever he is "in custody in violation of the constitution or of a law or treaty of the United States." In this case it is claimed that the prisoner is in custody in violation both of the constitution of the United States and of a treaty between the United States and the empire of China; and whether he is in custody in violation of the constitution or treaty is the very question to be investigated. It is claimed, however, that the writ of *habeas corpus* must be confined to 'cases to which it is appropriate, according to established common-law rules relating to the writ, and that it cannot be used as a substitute for a writ of error to review a judgment of a state or other court having jurisdiction to inquire into the matter and adjudge the rights of the parties; that in this case the state court, rendering the judgment under which the petitioner is imprisoned, had jurisdiction under the state law to hear and determine the question of the validity of the statute under which the conviction was had, and having determined it, as held by Chief Justice MARSHALL in *Ex parte Watkins*, 3 Pet. 202, 203, affirmed in subsequent cases, the judgment, in its nature, concludes the subject on which it is rendered and pronounces the law of the case; and when the judgment is of a court of record, whose jurisdiction is final, it is as conclusive on all the world as the judgment of the supreme court of the United States would be; that it puts an end to the inquiry concerning the fact by deciding it; and that, when a judgment is not of a court of final jurisdiction, it can only be reviewed on writ of error by the court having appellate jurisdiction over its judgment. This position is undoubtedly correct in respect to cases of mere error in the proceedings. But the supreme court, in later cases, has drawn a clear distinction between cases in which the judgment is erroneous, but still valid until reversed; notwithstanding the error, and cases absolutely void, as being entered without authority of law, and erroneously because unauthorized and void. This distinction is established in *Ex parte Lange*, 18 Wall. 175. In that case the statute authorized an alternative punishment for the offense for which conviction was had, of imprisonment for not more than one year, *or* a fine not exceeding $200. The court inadvertently adjudged an imprisonment of one year and a fine of $200. After paying the fine the prisoner moved for his discharge on the ground that the further imprisonment was unlawful, as being in excess of the power of the court to adjudge. Upon the error being called to its attention, the court at the same term vacated the judgment and entered another judgment of imprisonment only. Being imprisoned under the latter judgment he sued out a writ of *habeas corpus*, and was thereupon discharged by the supreme court. Upon the point now under consideration, Mr. Justice MILLER, speaking for the court, said:

"A judgment may be erroneous and not void, and it may be erroneous because it is void.  *  *  *  We are of opinion that when the prisoner, as in this case, by reason of a valid judgment, has fully suffered one of the alterna-

tive punishments to which alone the law subjected him, the power of the court to punish further was gone." The record "showed the court that its power to punish for that offense was at an end. The power was exhausted; its further exercise was prohibited. It was error, but it was error because the power to render any further judgment did not exist. It is no answer to this to say that the court had jurisdiction of the person of the prisoner, and of the offense under the statute. It by no means follows that these two facts make valid, however erroneous it may be, any judgment the court may render in such case. If a justice of the peace, having jurisdiction to fine for a misdemeanor, and with the party charged properly before him, should render a judgment that he be hung, it would simply be void. Why void? Because he had no power to render such a judgment. So, if a court of general jurisdiction should, on an indictment for libel, render a judgment of death, or confiscation of property, it would, for the same reason, be void." *Ex parte Lange,* Id. 176.

On the ground that the judgment was void for want of power, and not merely erroneous, the case was taken out of the rule claimed to be applicable to the present case, and the prisoner discharged. Mr. Justice CLIFFORD delivered an elaborate dissenting opinion, urging the principle and citing the authorities now relied on in this case. Thus the court established a distinction between judgments erroneous and not void, and judgments void as well as erroneous. And this distinction has since been recognized in several instances. Thus in *Ex parte Parks,* 93 U. S. 22, 23, the court says:

"From this review of the law it is apparent, therefore, as before suggested, that in a case like the present, where the prisoner is in execution upon a conviction, the writ ought not to be issued, or, if issued, the prisoner should be at once remanded, if the court below had jurisdiction of the offense, and did no act beyond the powers conferred upon it. The court will look into the proceedings so far as to determine this question. If it finds that the court below has transcended its powers, it will grant the writ and discharge the prisoner, even after judgment. *Ex parte Kearney,* 7 Wheat. 39; *Ex parte Wells,* 18 How. 307; *Ex parte Lange,* 18 Wall. 163. But if the court had jurisdiction and power to convict and sentence, the writ cannot issue to correct a mere error."

So in *Ex parte Reed* (decided at the present term) the court, speaking through Mr. Justice SWAYNE, says, (100 U. S. 23;)

"A writ of *habeas corpus* cannot be made to perform the functions of a writ of error. To warrant the discharge of the prisoner, the sentence under which he is held must be not merely erroneous and voidable, but absolutely void,"

- -Thus again recognizing the principle that if the judgment under which the prisoner is held be void as well as erroneous, he must be discharged on the writ of *habeas corpus,* and this involves the jurisdiction to inquire in such proceeding whether the judgment is void, or only erroneous and voidable. In *Ex parte Bridges,* 2 Woods, 429, Mr. Justice BRADLEY discharged a prisoner who had been convicted in a state court for the crime of perjury arising under a statute of the United States, on the ground that a state court has no jurisdiction of an offense created by an act of congress, and the judgment was therefore void. The jurisdictional

question on writ of *habeas corpus* was raised, upon which Mr. Justice BRADLEY observes:

"It is contended, however, that where a defendant has been regularly indicted, tried, and convicted in a state court, his only remedy is to carry the judgment to the court· of last resort, and thence by writ of error to the supreme court of the United States, and that it is too late for a *habeas corpus* to issue from a federal court in such a case. This might be so, if the proceeding in the state court were merely erroneous; but where it is void for want of jurisdiction, *habeas corpus* will lie, and may be issued by any court or judge invested with supervisory jurisdiction in such case." *Ex parte Lange,* 18 Wall. 163.

In speaking of the effect of the present statute, quoted at the commencement of this opinion, the learned justice adds:

"In view of our late civil strife, and the necessity of protecting those who claim the benefit of the national laws, congress, by the act of February 5, 1867, extended the writ to *all cases* where any person may be restrained of his or her liberty in violation of the constitution or of any treaty or law of the United States, and made it issuable by the several courts of the United States, and the several justices and judges of said courts within their respective jurisdictions." 14 St. 385.

The present case clearly belongs to the last category. The relator was certainly restrained of his liberty in violation of the law of the United States. The statutes above cited are condensed in section 753 of the Revised Statutes of the United States. They have had the effect greatly to enlarge the jurisdiction by *habeas corpus* in the courts of the United States since the first enactment on the subject in 1789. They have removed all impediment to its use which formerly existed where the prisoner was committed under state authority, provided his imprisonment is contrary to the United States constitution or laws. Mr. Justice BRADLEY participated in the decision in *Ex parte Lange,* cited by him, and in this opinion, and would not be likely to misapprehend the extent to which it was intended to go. If the act of the legislature of California creating, or attempting to create, the offense for which the petitioner was convicted and for which he is held in custody, was passed in violation of any provision of the constitution, or of the provisions of a valid treaty with China, it is void, and does not, and cannot, confer upon the state court any authority whatever to adjudge the defendant guilty of the offense charged, or to imprison him therefor. The judgment in that event is void, not merely voidable. The judgment is no more conclusive than that in the *Case of Lange.* In that case the court had jurisdiction of the subject-matter and the person. It had authority to determine whether it had exhausted its power or not. But having wrongly determined that its power had not been exhausted, this determination was held not to be conclusive, and the question was re-examined and the prisoner discharged on *habeas corpus.* The *Case of Bridges* is similar, and this case is also like those cases in this respect; and' like the instances cited in *Lange's Case* of a justice of the peace having jurisdiction to fine only, but adjudges that the prisoner be hanged. It is said the judgment is void, because the justice has no power to render such a judgment, and the

judgment against Lange was held to be void, because the power of the court had been exhausted, and there was no law authorizing any further judgment. So, in this case, if the statute under which the prisoner was convicted and held is void, it is no statute. It is no more effective than a piece of blank paper. If no statute, then there is no statute authorizing the conviction, and the court acted without any authority whatever. His judgment is no more effective than it would have been had the statute never been passed, and the conviction been had without any act upon the subject. If the act in question is void, then there is no law creating the offense for which the prisoner is convicted, and there is nothing over which the court had jurisdiction. It is said, further, that if this act is unconstitutional, the restraint of the petitioner's liberty is not "in violation of the constitution," in the sense of the statute, because there is no express inhibition in terms against the passage of such a law. Mr. Justice BRADLEY did not take this view in *Bridges' Case*, for he says: "The present case clearly belongs to the last category. The relator was certainly 'restrained of his liberty in violation of a law of the United States.'" 2 Woods, 432. Yet there was no more an express prohibition in that case than in this. The state court simply undertook to punish an offense against the United States. There was an offense committed, but it was an offense against another sovereignty. There was no offense of which that court could take cognizance. So in *Lange's Case* there was no express prohibition against inflicting both punishments. The provision simply authorized alternative punishments, and the prohibition was not express, but only inferred from a want of a provision expressly authorizing both punishments. I am satisfied, under these authorities, that this court has jurisdiction upon *habeas corpus* to inquire into the validity of the state statute under which the prisoner was convicted, and if found void, that the judgment as rendered in pursuance of its provisions is also void, and the prisoner entitled to his discharge. The case will, therefore, be retained for the purpose of this inquiry; and the motion to dismiss for want of jurisdiction to examine the case is overruled. Counsel will argue the case upon the merits as to the constitutionality and validity of the act and validity of the judgment.